**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 25-cv-3408

HUDSON EXCESS INSURANCE COMPANY,

*Plaintiff,*

v.

GCON CO., GEROLD ALLAN PULCZINSKI,
a/k/a JERRY ALLAN PULCZINSKI AND
AMACON CONSTRUCTION, LLC,

*Defendants.*

---

## COMPLAINT FOR DECLARATORY JUDGMENT

---

Plaintiff Hudson Excess Insurance Company ("Hudson"), through counsel, Hall & Evans, LLC bring this Complaint for Declaratory Judgment against GCon Co. ("GCon"), Gerold Allan Pulczinski, a/k/a Jerry Allan Pulczinski ("Pulczinski") and Amacon Construction, LLC ("Amacon"), and states as follows:

### Nature of Action

1. This is an insurance coverage dispute between Hudson and Defendants GCon and Pulczinski. Hudson seeks a declaration that it has no duty to defend or indemnify GCon and Pulczinski under a policy of insurance issued by Hudson to Amacon for the claims asserted in the underlying action captioned *Amacon Construction LLC v. GCon Co., et al.*, Case No. 2025 CV32948 pending in the District Court, City and County of Denver, State of Colorado (the "Underlying Action").

## Jurisdiction and Venue

2. The jurisdiction of this Court is premised upon 20 U.S.C. 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

3. Venue is premised upon 28 U.S.C. §1391 as all of the Defendants are residents of this District.

## Parties

4. Hudson Excess Insurance Company is an insurance company organized under the laws of Delaware and eligible to conduct business in Colorado.

5. Upon information and believe, GCon is a Colorado corporation with its principal place of business located at 5069 Eckert Street, Castle Rock, Colorado.

6. Upon information and believe, Pulczinkski is an individual residing at 5075 Hickory Oaks Street, Castle Rock, Colorado. Upon information and belief, Mr. Pulczinski is the President of GCon.

7. Upon information and belief, Amacon is a Colorado limited liability company. It is joined herein only because it has a potential interest in the outcome of this action and are "required parties" under FRCP 19.

## Factual Background

8. On September 5, 2025, Amacon filed its Amended Complaint and Jury Demand (the "Underlying Complaint") in the Underlying Action against GCon and Pulczinski. A true and correct copy of the Underlying Complaint is attached hereto as **Exhibit A**.

9. The Underlying Action arises from allegations of alleged defects in elements of a 461-unit condominium project in downtown Denver known through the development process as "Block 176" and now being marketed as the Upton Residences (the "Project"). Ex. A, ¶ 1.

10. In the Underlying Complaint, Amacon alleges that at all relevant times it was the general contractor for the Project. Ex. A, ¶ 2.

11. According to the Underlying Complaint, GCon was a concrete forming, placing and finishing subcontractor with respect to construction of the Project. Ex. A., ¶3. On or about June 27, 2022, Amacon and GCon entered into a Subcontract Agreement wherein GCon would perform concrete work for the Project and in exchange, Amacon would pay GCon an amount of $16,050,000. Ex. A, ¶ 14.

12. According to the Underlying Complaint, GCon's scope of work on the Project includes ensuring the proper forming, placement and curing of concrete for structural integrity and longevity. Ex. A, ¶ 130.

13. The Underlying Complaint alleges that GCon and Pulczinski were responsible for adhering to building codes and industry standards such as ACI 117, which is the Specification for Tolerances for Concrete Construction and Materials, a standard published by the American Concrete Institute (ACI). Ex. A, ¶ 131.

14. According to the Underlying Complaint, the Project broke ground in April 2022. Ex. A, ¶ 136.

15. According to the Underlying Complaint, GCon and Pulczinski mobilized on the site almost immediately after entering the Subcontract on June 27, 2022. Ex. A, ¶ 137.

16. The Underlying Complaint alleges that in or about May 2025, GCon and Pulczinski became increasingly persistent in its demand for release of Amacon's retention of

funds GCon claimed it was entitled to, with threats of suspension of work if payment wasn't made in full. In response, Amacon advised GCon of a multitude of deficiencies in GCon's work that would need to be rectified before such funds were released. Amacon identified the major deficiencies as including several misaligned embeds, missing embeds, finishing deficiencies, various inconsistent planes in slab edges, and concrete placed not in accordance with standards or contractual specification or tolerances (the "Defects"). Ex. A, ¶ 138.

17. Amacon claims in the Underlying Complaint that the Defects, among other items, have caused progressive, continuing and worsening damage at the Project, and continue to cause resultant and ensuing property and other consequential property damage, and other damages. Amacon claims that it continues to discover additional defects and non-compliant conditions. Further, Amacon claims that the occurrence of this actual property damage was un-manifested and unknown to Amacon until it progressed to the point where it was reasonably detectable. Ex. A, ¶ 139.

18. According to the Underlying Complaint, on or about May 23, 2025, GCon and Pulczinski halted work on Levels 39 and above while slowing work below on the Project, citing Amacon's allegedly wrongful withholding of funds. Amacon further alleges that in light of Amacon's notice, GCon and Pulczinski discovered Amacon was correct in that there were three missing embed plats and immediately corrected this error, but corrected no other errors. Ex. A, ¶ 141.

19. The Underlying Complaint alleges that on or about July 11, 2025, upon GCon and Pulczinski's refusal to mobilize on the Project, Amacon issued a written 48-Hour Notice to Cure pursuant to the Subcontract. The notice demanded that GCon and Pulczinski provide adequate

written assurance that it will mobilize on the Project and complete the pour on the remaining levels of the Project. Ex. A, ¶ 147.

20. The Underlying Complaint alleges that on or about July 12, 2025, in response to Amacon's notice to cure, GCon served upon Amacon its own 48-Hour Notice to Cure, demanding full payment for GCon's work, retraction of Amacon's allegations of default against GCon, and written assurances that Amacon will refrain from misusing or transferring GCon's allegedly proprietary formwork or systems. Ex. A, ¶ 148.

21. According to the Underlying Complaint, on or about July 14, 2025, both GCon and Amacon declared that the other party was in material breach of the Subcontract. Ex. A, ¶ 149-150.

22. Amacon alleges that following receipt of GCon's notice of termination, it immediately engaged a replacement concrete contractor for the Project to take over and remedy GCon's work. Ex. A, ¶ 166.

23. Amacon alleges in the Underlying Complaint that for the next three weeks after July 14, 2025, Amacon made reasonable efforts to resolve the dispute and work with GCon and Pulczinski to allow GCon to mobilize on the floors of the Project which GCon and Pulczinski suspended and slowed works and complete its work under the Subcontract. Ex. A, ¶ 151.

24. According to the Underlying Complaint, on or about August 4, 2025, upon coming to an impasse on informal resolution, GCon and Pulczinski started removing materials and equipment from the Project site without the prior knowledge or approval of any management or authority of Amacon. Ex. A, ¶ 152.

25. Amacon also alleges in the Underlying Complaint that GCon and Pulczinski removed reshore at various locations. Amacon described reshore in the Underlying Complaint as

the temporary support system placed beneath a concrete slab or other structural element after the initial formwork and shoring have been removed. Ex. A, ¶ 154.

26. The Underlying Complaint alleges that on or about August 6, 2025, GCon served Amacon with a notice of termination of its work on the Project. Ex. A, ¶ 155.

27. In the Underlying Complaint, Amacon alleges that it has sustained or will sustain damages, including, actual property damage and/or other losses, past and future repair and mitigation expenses, consequential damages to, and the loss of use of, various elements and/or portions of the Project, and other direct economic costs, repair costs, engineering fees, attorneys' fees and litigation costs. Ex. A, ¶ 157.

28. The Underlying Complaint alleges four counts: 1) Breach of Contract against GCon; 2) Injunctive Relief against both GCon and Pulczinski; 3) Negligence against both GCon and Pulczinski and 4) Negligent Misrepresentation/Nondisclosure against both GCon and Pulczinski.

29. Hudson issued a Commercial General Liability policy to Amacon Development (Broadway), LLC under Policy No. HCG 1000585 01 (the "Policy"). The Policy was issued for the policy period of February 1, 2022 to February 1, 2026. A true and correct copy of the Policy is attached hereto as **Exhibit B**.

30. On or about September 30, 2025, Hudson received a tender of claim for defense and indemnity of the Underlying Action from GCon Co.

31. On or about October 7, 2025, Hudson sent a letter to GCon and Pulczinski agreeing to defend GCon and Pulczinski under the Policy with respect to the Underlying Action pursuant to a reservation of rights. A true and correct copy of the 10/7/25 letter is attached hereto as **Exhibit C.**

32. Hudson seeks a declaratory judgment that the Policy does not provide coverage for the claims asserted in the Underlying Action, and Hudson has no duty to defend or indemnify GCon or Pulczinski in the Underlying Action.

33. An actual controversy has arisen and exists concerning Hudson's coverage obligations under the Policy, which merits a determination of rights of the parties by this Court.

## The Hudson Policy

34. The Policy contains the following relevant Coverage A Insuring Agreement:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

***

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

***

35. The Policy contains the following Coverage A Definitions:

16. "Products-completed operations hazard" means:

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**a.** When all the work called for in your contract has been completed.

**b.** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**c.** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injury. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

36. The Policy contains the following relevant Endorsements:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**DESIGNATED WRAP-UP ENDORSEMENT**

**(INCLUDING EXTENDED COMPLETED OPERATIONS COVERAGE)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE OF PROJECT(S)**

| |
|---|
| **Project Names:**<br>Block 176 |
| **Project Addresses:**<br>519 18th Street, Denver, CO 80202. Coverage also applies to off-site operations within 2000 feet of the project address that are necessary and incidental to the described project. |
| **Project Descriptions:**<br>OCIP - Ground up construction of 2, 35 story concrete condo buildings with 461 total units. |

| |
|---|
| **Project Sponsors:**<br>Amacon Development |
| **Project Designated General Contractor:**<br>Amacon Construction, LLC<br>(Any change of the Designated General Contractor during the policy term must be pre-approved by us) |
| **Wrap-up Administrator:**<br>Lockton |
| **Third Party Quality Assurance Vendor (if required):**<br>Quality Built. Requirements per the executed contract in file dated 8/24/2021. |

**A.** The Named Insured section of the Declarations is amended to include all "enrolled contractors," but only with respect to **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**.

**B.** Paragraph **b. (1).** is deleted from **SECTION I – COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY 1. Insuring Agreement** and replaced by the following:

**(1)** the "bodily injury" or "property damage" is caused by an "occurrence" that takes place at the project(s) listed in the Schedule of Project(s) above.

***

**D.** Exclusion **j.** is deleted from **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY 2. Exclusions** and replaced by the following:

**j.** **Property Damage**

"Property Damage" to:

**(1).** Personal property in the care, custody, or control of any insured.

**(2).** The project(s) listed in the Schedule of Project(s). Paragraph (2) does not apply if the "property damage" is included within the "products-completed operations hazard."

**E.** Exclusions **k.** and **l.** are deleted in their entirety from **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY 2. Exclusions.**

***

**H.** The following is added to **SECTION V – DEFINITIONS**:

"Enrolled Contractors" mean those licensed contractors who have completed the Enrollment Document for the project(s) listed in the Schedule of Project(s) above prior to the commencement of their work on the relevant project(s). However, unless specifically listed as Enrolled Professionals in the Schedule of Project(s) above, "enrolled contractors" do not include any:

**1.** Manufacturers or suppliers of materials,

**2.** Contractors or subcontractors engaged in environmental work, or

**3.** Architects, engineers, surveyors, geologists or soil professionals, or any other professionals.

***

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**EXCLUSION – (WRAP-UP) CROSS SUITS FOR PROPERTY DAMAGE ONLY WITH SPECIFIED ENTITY EXCEPTION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and to Paragraph **2. Exclusions** of **SECTION I – COVERAGES, PRODUCTS/COMPLETED OPERATIONS BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

This insurance does not apply to:

Any liability for "property damage" claimed by one Named Insured against another Named Insured. This exclusion does not apply to "property damage" that occurs after the completion of a "Scheduled Project" and that is claimed by the entity(s) listed below:

Amacon Development (Broadway), LLC
Amacon Construction, LLC
However, the cross suits exclusion shall apply to suits brought between Amacon Development (Broadway), LLC and Amacon Construction, LLC

**A.** "Scheduled Project" is described in the Schedule of Project(s) section of endorsement HCG-2895 or endorsement HCG-2890, whichever is attached to this policy. Unless specifically stated otherwise in the Schedule of Project(s), all work in the Project Descriptions section is to be considered a single "Scheduled Project."

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**COUNT I – Declaratory Judgment That The Underlying Action Alleges Damages that Do No Fall Withing the Insuring Agreement of the Policy**

37. Plaintiff adopts and repeats the allegations of Paragraphs 1 through 36 as and for Paragraphs 37, as though the same were fully set forth herein.

38. Coverage A of the Policy provides coverage for "bodily injury" or "property damage" caused by an "occurrence" during the policy period.

39. The Underlying Action does not allege "bodily injury" caused by an "occurrence".

40. The Underlying Action alleges certain damages that do not constitute "property damage" caused by an occurrence such as economic loss and injunctive relief.

41. To the extent the Underlying Action does allege "property damage" taking place during the Policy's policy period, coverage is precluded based upon various exclusions to the Policy.

42. The Policy does not actually or potentially provide coverage for the Underlying Action.

43. As a result, Hudson has no duty to defend or indemnify GCon or Pulczinski against the Underlying Action.

**COUNT II – Declaratory Judgment That The Designated Wrap-Up Endorsement in the Policy Precludes Coverage for Any Alleged "Property Damage"**

44. Plaintiff adopts and repeats the allegations of Paragraphs 1 through 36 as and for Paragraphs 44, as though the same were fully set forth herein.

45. The Policy contains an Endorsement titled Designated Wrap-Up Endorsement (Including Extended Completed Operations Coverage), which provides, in relevant part:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**DESIGNATED WRAP-UP ENDORSEMENT**

**(INCLUDING EXTENDED COMPLETED OPERATIONS COVERAGE)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE OF PROJECT(S)**

| |
|---|
| **Project Names:**<br>Block 176 |
| **Project Addresses:**<br>519 18th Street, Denver, CO 80202. Coverage also applies to off-site operations within 2000 feet of the project address that are necessary and incidental to the described project. |
| **Project Descriptions:**<br>OCIP - Ground up construction of 2, 35 story concrete condo buildings with 461 total units. |
| **Project Sponsors:**<br>Amacon Development |
| **Project Designated General Contractor:**<br>Amacon Construction, LLC<br>(Any change of the Designated General Contractor during the policy term must be pre-approved by us) |
| **Wrap-up Administrator:**<br>Lockton |
| **Third Party Quality Assurance Vendor (if required):**<br>Quality Built. Requirements per the executed contract in file dated 8/24/2021. |

**C.** The Named Insured section of the Declarations is amended to include all "enrolled contractors," but only with respect to **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**.

**D.** Paragraph **b. (1).** is deleted from **SECTION I – COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY 1. Insuring Agreement** and replaced by the following:

**(1)** the "bodily injury" or "property damage" is caused by an "occurrence" that takes place at the project(s) listed in the Schedule of Project(s) above.

***

**D.** Exclusion **j.** is deleted from **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY 2. Exclusions** and replaced by the following:

**j.** **Property Damage**

"Property Damage" to:

**(3).** Personal property in the care, custody, or control of any insured.

**(4).** The project(s) listed in the Schedule of Project(s). Paragraph (2) does not apply if the "property damage" is included within the "products-completed operations hazard."

**E.** Exclusions **k.** and **l.** are deleted in their entirety from **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY 2. Exclusions.**

***

**H.** The following is added to **SECTION V – DEFINITIONS**:

"Enrolled Contractors" mean those licensed contractors who have completed the Enrollment Document for the project(s) listed in the Schedule of Project(s) above prior to the commencement of their work on the relevant project(s). However, unless specifically listed as Enrolled Professionals in the Schedule of Project(s) above, "enrolled contractors" do not include any:

**4.** Manufacturers or suppliers of materials,

**5.** Contractors or subcontractors engaged in environmental work, or

**6.** Architects, engineers, surveyors, geologists or soil professionals, or any other professionals.

***

46. Upon information and belief, GCon is an enrolled contractor and thus, a Named Insured pursuant to the terms of the Wrap-Up Endorsement.

47. The Schedule of Project within the endorsement is the Project at issue in the Underlying Action.

48. However, the Wrap-Up Endorsement precludes coverage for damage to the Project unless the "property damage" is included within the "products-completed operations hazard".

49. The Policy defines "products-completed operations hazard" as follows:

> "Products-completed operations hazard" means:
>
> **b.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
> **(3)** Products that are still in your physical possession; or
>
> **(4)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
>
> **a.** When all the work called for in your contract has been completed.
>
> **b.** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
>
> **c.** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

50. The Underlying Action does not allege "property damage" arising from a "products-completed operations hazard" as defined by the Policy. All work in the Subcontract was not completed, all work at the Project was not completed and the work done at the Project was not put to its intended use at the time of the alleged "property damage". Accordingly, the

product exclusion within the Designated Wrap-Up Exclusion precludes coverage for any alleged "property damage" in the Underlying Action.

51. Accordingly, the Policy does not actually or potentially provide coverage for the Underlying Action.

52. As a result, Hudson has no duty to defend or indemnify GCon or Pulczinski against the Underlying Action.

**COUNT III – Declaratory Judgment That The Cross Suits Exclusion in the Policy Precludes Coverage for the Underlying Action**

53. Plaintiff adopts and repeats the allegations of Paragraphs 1 through 36 as and for Paragraphs 53, as though the same were fully set forth herein

54. The Policy contains an Endorsement titled Exclusion – (Wrap-Up) Cross Suits For Property Damage Only with Specified Entity Exception, which provides, in relevant part:

> **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**
>
> **EXCLUSION – (WRAP-UP) CROSS SUITS FOR PROPERTY DAMAGE ONLY WITH SPECIFIED ENTITY EXCEPTION**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
>
> **A.** The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and to Paragraph **2. Exclusions** of **SECTION I – COVERAGES, PRODUCTS/COMPLETED OPERATIONS BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**
>
> This insurance does not apply to:
>
> Any liability for "property damage" claimed by one Named Insured against another Named Insured. This exclusion does not apply to "property damage" that occurs after the completion of a "Scheduled Project" and that is claimed by the entity(s) listed below:

Amacon Development (Broadway), LLC
Amacon Construction, LLC
However, the cross suits exclusion shall apply to suits brought between Amacon Development (Broadway), LLC and Amacon Construction, LLC

> **A.** "Scheduled Project" is described in the Schedule of Project(s) section of endorsement HCG-2895 or endorsement HCG-2890, whichever is attached to this policy. Unless specifically stated otherwise in the Schedule of Project(s), all work in the Project Descriptions section is to be considered a single "Scheduled Project."

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

55. The Cross Suits exclusion precludes coverage for any liability for "property damage" claimed by one Named Insured against another Named Insured.

56. Amacon, GCon and Pulczinski are named insureds under the Policy.

57. Both Amacon and GCon are enrolled contractors to the Project. See redacted list of enrolled contractors attached hereto as Exhibit D.

58. Pulczinski is a named insured with respect to its role as the president of GCon.

59. The Cross-Suit exclusion contains an exception to the exclusion for claims made by certain entities including Amacon. However, this exception is limited to "property damage" that occurs after the completion of a "scheduled project." Further, all work in the project description section is to be considering a single "scheduled project".

60. The Project is a scheduled project as set forth in the Designed Wrap Up Endorsement cited above.

61. The exception to the Cross Suits exclusion for claims brought by Amacon does not apply because all work on the Project was not completed when the alleged "property damage" occurred.

62. Accordingly, the Policy does not actually or potentially provide coverage for the Underlying Action.

63. As a result, Hudson has no duty to defend or indemnify GCon or Pulczinski against the Underlying Action.

**COUNT IV – Declaratory Judgment That Hudson is Entitled to Reimbursement of Defense Costs Incurred in the Underlying Action**

64. On October 7, 2025, Hudson agreed to defend GCon and Pulzinski in the Underlying Action pursuant to a reservation of rights. See, Ex. C.

65. In its reservation of rights letter, Hudson specifically reserved the right to seek reimbursement of defense costs for uncovered claims. See, Ex. C, p. 11.

66. Since Hudson does not have a duty to defend GCon or Pulzinski in the Underlying Action based upon the terms and conditions of the policies as set forth in Counts I-III above, Hudson seeks a declaration that it is entitled to reimbursement of the defense costs it has incurred defending GCon and Pulczinski in the Underlying Action.

WHEREFORE, Plaintiff Hudson Excess Insurance Company respectfully requests that this Court enter a judgment finding and declaring as follows:

a. That Hudson Insurance Company policy number HCG 1000585 01 does not provide coverage for GCon, Pulczinski or Amacon with respect to the action bearing Case No. 2025 CV32948 pending in the District Court, City and County of Denver, State of Colorado;

b. That Hudson Excess Insurance Company does not have a duty to defend with GCon, Pulczinski or Amacon with respect to the action bearing Case No. 2025 CV32948 pending in the District Court, City and County of Denver, State of Colorado;

c. That Hudson Excess Insurance Company does not have a duty to indemnify GCon, Pulczinski or Amacon with respect to the action bearing Case No. 2025 CV32948 pending in the District Court, City and County of Denver, State of Colorado;

d. That all Defendants are enjoined from seeking to recover under Hudson Excess Insurance Company policy number HCG 1000585 01 with respect to the action bearing Case No. 2025 CV32948 pending in the District Court, City and County of Denver, State of Colorado;

e. That GCon and Pulczinski must reimburse Hudson all defense costs it incurred defending GCon and Pulczinski in the Underlying Action.

f. That Hudson Excess Insurance Company be awarded its costs incurred in this action; and

g. That the Court enter such further declarations and award such further relief as it deems necessary and appropriate.

Respectfully submitted this 28th day of October 2025.

Hall & Evans, LLC

*s/ Valerie Garcia*
Valerie Garcia, #30015
*Attorney for Plaintiff Hudson Excess Insurance Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2025, a true and correct copy of the foregoing **COMPLAINT FOR DECLATORY JUDGEMENT** was filed with the Court and served via Colorado Courts E-Filing to the following:

**COUNSEL OF RECORD**

*s/ Marisa Thompson*
Marisa Thompson, Legal Assistant

**In accordance with C.R.C.P. 121 § 1-26(7)-(9), a printed copy of this document with original signatures is being maintained by the filing party and will be made available for inspection by other parties or the court upon request.*